## No. 20,117.

THEODORE C. RUARK *v.* PEOPLE OF THE STATE OF COLORADO.

(372 P. [2d] 158)

Decided June 11, 1962.    Rehearing denied June 25, 1962.

Plaintiff in error, pro se.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. J. F. BRAUER, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

PLAINTIFF in error, to whom we will refer as defendant, was found guilty on both counts of an information in which he was accused of the crime of aggravated robbery and entering into a conspiracy to commit that

offense. He was sentenced to ten to twenty years on the robbery count and five to ten years on the conspiracy count, the sentences to run concurrently.

In this court defendant appears pro se. As grounds for reversal he asserts that the trial court erred in the proceedings resulting in the judgment above mentioned, in the following particulars:

"1. The jury list that was supplied by the People contained 66 names but only 33 names being called for duty.

"2. The Motion made by the defendant at the close of the People's evidence for a directed verdict of acquittal should have been granted for the reason that the People failed to offer any proof that the Court had jurisdiction of the subject matter.

"3. Permitting the prosecutor to draw from witness Jiminez statements of other offenses not relating to the case on trial.

"4. Limiting cross examination of State's witness Jiminez in regard to the conflict between defendant and Jiminez.

"5. Denying defendant presumption of innocence by allowing the jury to view defendant shackled and escorted into the courtroom under heavy guard.

"6. The Court failing to instruct the jury as to the weight to be given an attempted escape."

A brief statement of the facts established by an abundance of evidence is in order. About 6:00 P.M. on January 5, 1961, defendant went to the home of his brother-in-law in Denver, Colorado, and told him to come along and go make some holdups. They drove out to the Green Meadows Conoco station at 2195 South Sheridan and on the way defendant explained to his brother-in-law what they would do when they got there. Defendant and his brother-in-law each had a gun and when they walked toward the gas station attendant who asked them what he could do for them, they pulled out their guns, announced that it was a holdup and told the

gas station attendant to open the cash register and give them all the money. When handed the money defendant said that wasn't all of it, whereupon the attendant gave him an additional $7.00 worth of change from a separate box kept under the cash register. About that time a second gas station attendant, who had been out picking up a car, returned and defendant's brother-in-law then pulled out his gun and ordered the second attendant up against the wall with the first one. The bandits took a total of between $90.00 and $102.00, and then in the process of ordering the two attendants into the restroom fired a shot which lodged in the door near one attendant's foot. The two attendants waited in the restroom for only a few minutes and then came out and notified their employer and the Jefferson county sheriff's office.

On January 10, 1961, at a police lineup, both the gas station attendants identified defendant as one of the men who held them up and was the one who demanded and received the money. On January 13, 1961, when defendant was asked if the amount listed on the offense report correctly stated the total that had been received in the robbery, defendant replied, "No, not quite" or "No, not quite that much." Defendant was later charged with aggravated robbery and conspiracy to commit the same, to both of which counts he pleaded not guilty.

Defendant was tried alone and his partner in the commission of the crime became a witness for the people. He was asked by the district attorney where he and defendant got the guns which they used in the holdup. He answered, "Well, we got them from another holdup." Counsel for defendant moved that the response be stricken, and the court granted the motion and ordered the statement stricken. Defendant now asserts that, notwithstanding the court granted the only motion that was made by counsel with reference to this incident, the remark of his associate in crime was error making a reversal of the judgment necessary. There is

no merit to this argument. *Parrott v. People,* 144 Colo. 587, 357 P. (2d) 634; *Shier v. People,* 116 Colo. 353, 181 P. (2d) 366; *Bayless v. U. S.,* 200 F. (2d) 113.

■ Defendant relies for reversal on the following incident disclosed by the record:

"MR. WILSON: If your Honor please, I would like to move at this time for a mistrial in this action on the following grounds: Yesterday I moved that the jury be kept in the custody of the Bailiff overnight. This morning I would like to offer testimony to the effect that as the defendant Theodore Ruark was being brought over to the trial and was handcuffed, he met juror No. 3, Mrs. Matherly.

"MR. WILLISON [the Deputy District Attorney]: Where?

"THE DEFENDANT: Coming up the court house stairs, inside.

"MR. WILSON: Upon the court house stairs of the Court House, in Jefferson County. She was able to view him while he was handcuffed and being transported over here.

"Upon those grounds, I feel there would be undue prejudice against the defendant, especially in view of the fact of my motion for keeping the jury in custody; and upon those grounds I move at this time for a mistrial."

The court did not err in denying this motion for mistrial.

There is no merit whatever to other points argued by defendant. The facts related by the witnesses called by the district attorney are not disputed in any way. Defendant offered no witnesses. His guilt was overwhelmingly established.

The judgment is affirmed.