**Raul Leopoldo CRUZ, Petitioner,**

v.

**Wayne K. PATTERSON, Warden of Colorado State Penitentiary, Respondent.**

**Civ. A. No. 9537.**

United States District Court
D. Colorado.

Feb. 23, 1966.

Harry L. Arkin, Denver, Colo., for petitioner.

Duke W. Dunbar, Atty. Gen. of Colorado, Frank E. Hickey, Deputy Atty. Gen., and George E. DeRoos, Asst. Atty. Gen., Denver, Colo., for respondent.

ARRAJ, Chief Judge.

This matter is before the Court on petition for a writ of habeas corpus. The petitioner has exhausted his state remedies.

The following facts appear from the record. In August, 1959, petitioner, an indigent, was convicted of robbery and conspiracy to commit robbery; he was represented by Court-appointed counsel. Desiring to appeal his conviction, he

twice requested the Colorado Supreme Court to appoint counsel to assist him in perfecting his appeal and both requests were denied. His request to the trial court for the appointment of such counsel was also denied. He then appealed, *pro se,* to the Colorado Supreme Court, and the conviction was affirmed on the merits. Cruz v. People, 149 Colo. 187, 368 P.2d 774 (1962).

Subsequently, the petitioner sought a writ of habeas corpus in the state trial court contending that the Courts' refusal to afford him the aid of counsel to perfect his appeal denied him the constitutional guarantees of due process and equal protection of the law as enunciated in Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). Relief was denied in the trial court on October 13, 1964, such denial being affirmed by the State Supreme Court, February 4, 1965.

The Colorado Supreme Court, in affirming the denial of the petition for habeas corpus, in view of the decision of Ruark v. Colorado, 378 U.S. 585, 84 S.Ct. 1935, 12 L.Ed.2d 1042 (1964), and in accordance with its practice since that decision, entered the following Order.

> In view of the peculiar circumstances of this action, the plaintiff in error having specifically requested counsel for appeal to this court and the request having been specifically denied by this court prior to the decision of the United States Supreme Court in the case of Douglas vs. [People of State of] California, the trial court is directed to forthwith appoint counsel in this case in order to determine whether any reversible error reviewable by this court occurred during the course of the trial which was not presented upon former consideration of this case. If such error did occur, counsel should file with this court, within sixty days from his appointment, a brief setting forth such error and his argument in support of his position. Counsel is further directed to examine the pro se briefs filed by the plaintiff in error and the opinion of the court in this cause for

> the purpose of determining whether the points raised by plaintiff in error were adequately presented and, if in his opinion they were not, he is directed to file a supplemental brief on behalf of plaintiff in error within sixty days from his appointment. If, in appointed counsel's opinion, no grounds for writ of error other than those presented by plaintiff in error in his original briefs occurred during the trial, and if, in his opinion, the cause was adequately presented to this court counsel shall so report to this court within said sixty days from his appointment.

> By the Court. February 4, 1965.

An attorney was appointed to study the petitioner's case, and on April 12, 1965, reported to the Supreme Court of Colorado that

> The opinion of this Court covers all matters raised by the motion for new trial. A review of the entire record fails to disclose any error not presented in the motion for new trial or not covered by the opinion of this Court. The opinion and the record indicate that the defendant received full protection of all legal rights and he was afforded a fair and impartial trial in the lower Court and a complete review of all matters in this Court.

> It is my opinion that no grounds for writ of error other than those presented and considered by this Court are in the entire record that require consideration or further consideration. The defendant was given the benefit of all doubt, the jury was properly instruction (sic) and they resolved the facts supported by ample evidence culminating in a proper verdict.

Subsequently, the Colorado Supreme Court, acting upon this report, " * * * decline[d] to appoint other counsel in this case and * * * reaffirm[ed] [the] previous judgment in the matter." Cruz v. People, 401 P.2d 830 (Colo.1965), cert. denied Cruz v. Colorado, 382 U.S. 869, 86 S.Ct. 145, 15 L.Ed.2d 108 (1965).

The question here presented is—Was there a compliance with the mandate of

Douglas v. People of State of California, supra, in the instant case? We believe not.

 In a series of decisions beginning with Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), the Supreme Court has established that the guarantee of equal protection of the law set forth in the 14th amendment admits of no exceptions that would permit the discriminatory enforcement of the criminal law between the rich and the poor defendant. A concomitant of this basic principle is exemplified in those decisions that, in developing the basic guarantee of the 6th amendment that the accused shall have the assistance of counsel for his defense, unequivocally declare that the indigent defendant shall be afforded the assistance of counsel at all the critical stages of the criminal proceeding. Beginning with the accusatory stage, Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), continuing through the arraignment, Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961), the actual trial on the merits of the cause, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and culminating in the appellate phases of the criminal proceeding, Douglas v. People of State of California, supra, Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963), the principle that must be applied is clear and unambiguous—the right of the indigent defendant to the assistance of counsel during the critical stages of the criminal proceeding is absolute.

In *Douglas* the Court, after concluding that the, " * * * [d]enial of counsel on appeal [to an indigent] would seem to be a discrimination at least as invidious as that condemned in Griffin v. People of State of Illinois * * * ", 372 U.S. at 355, 83 S.Ct. at 815, enunciated that an indigent defendant, like the defendant who is able to pay, is entitled to the assistance of counsel to assert his cause before the appellate tribunal so that the appeal to which he, by the law of the state, is entitled will be a "meaningful"

appeal rather than a "meaningless ritual". 372 U.S. at 358, 83 S.Ct. at 817. The Court, in discussing the incidents included in the right to the assistance of counsel on appeal, noted in Douglas, that the indigent, like the non-indigent, is entitled to, " * * * the benefit of counsel's examination into the record, research of the law, and *marshalling of arguments on his behalf * * * *.*" 372 U.S. at 358, 83 S.Ct. at 817. (Emphasis supplied). Thus, *Douglas* assured to the indigent the full and complete assistance of counsel *at all phases of the appellate review*. See Pate v. Holman, 341 F.2d 764 (5th Cir. 1965); United States ex rel. Weston v. Sigler, 308 F.2d 946 (5th Cir. 1962). See generally Draper v. State of Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963); Burns v. State of Ohio, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209 (1959).

 It is inherent in such guarantee that counsel so appointed by the state shall be *effective* counsel. See Grubbs v. State of Oklahoma, 239 F.Supp. 1014 (E.D.Okl.1965); Chase v. Page, 343 F.2d 167 (10th Cir. 1965). We believe that for counsel to be an effective representative of his client, he must be an *advocate* of that client's cause. The judicial history surrounding Ellis v. United States, 356 U.S. 674, 78 S.Ct. 974, 2 L.Ed.2d 1060 (1958), vacating Ellis v. United States, 101 U.S.App.D.C. 386, 249 F.2d 478 (C.A.D.C. 1957) provides a fair illustration of this principle that representation in the role of an advocate is required. The Court of Appeals for the District of Columbia, in implementing Johnson v. United States, 352 U.S. 565, 77 S.Ct. 550, 1 L.Ed.2d 593 (1957) (which may be characterized as the federal counterpart of *Douglas*) instituted a procedure for the appointment of appellate counsel that is similar to that used by the State of Colorado in the case at bar. There, in appointing counsel to represent the indigent defendant with respect to the petition to proceed without prepayment of costs, the Court directed counsel to, " * * determine for the benefit of this court whether

the case warranted review." 249 F.2d at 478. After studying the defendant's case, appointed counsel reported to the Court that there appeared to be only, " * * * one 'possible' area of error; * * * " but that, after reviewing the facts surrounding that particular sector of the case, it was their conclusion that, "there was not such merit even in this aspect of the appeal as to warrant further prosecution of the appeal." 249 F.2d at 479. The Court, in accepting counsel's report and denying the petition to proceed without the prepayment of costs, emphasized that counsel advised the Court, and that they agreed, " * * * *that no substantial question existed in this case.*" Id., at 479 (emphasis in the original). The Supreme Court in vacating the judgment and remanding the case for further consideration, stated

> In this case, it appears that the two attorneys appointed by the Court of Appeals, performed essentially the role of *amici curiae*. But representation in the role of an advocate is required. Ellis v. United States, 356 U.S. at 675, 78 S.Ct. at 975.

■ Guided by the principle of *Douglas,* that the indigent defendant is to be afforded the assistance of appellate counsel who shall represent him as an advocate rather than as an *amici curiae* to insure that the appeal will be an adequate and meaningful proceeding, it is our conclusion that, rather than providing counsel to represent the petitioner in a fashion that accords with the principle alluded to above, the system utilized by the state tribunal, in an effort to comply with the mandate of *Douglas,* is, in reality, a 'screening device' which resulted in counsel in this case assuming primarily the role of an advisor, rather than an advocate, to the Court as to whether the case warranted further consideration. Indeed, by the very terms of the order, counsel was to determine whether any *reversible error* occurred in the defendant's trial, a burden much greater than that imposed upon counsel in *Ellis,* supra, which was to determine whether the

case *warranted review.* Only if he concluded that such error did occur, then was he to assume the role of the advocate and argue his client's cause. Who but the appellate court can make the ultimate determination as to whether reversible error occurred at trial? The teaching of *Douglas* precludes such duality of roles; both the letter as well as the spirit of that decision demand that counsel appointed to represent the indigent on appeal devote his professional skill and full energies to the one overriding duty—representation of his client in the role of an advocate.

When the report filed by the appointed attorney is measured against the requisites of *Douglas,* that the indigent defendant is entitled to the benefit of counsel's examination into the record, research of the law, and the marshalling of the arguments in his behalf, it becomes apparent that this petitioner was accorded the benefit of counsel acting primarily as an *amici curiae* rather than as an advocate of his client's cause. This advisory function is clearly shown in two instances concerning petitioner's *pro se* appeal; first his 'inept assignment of error' and secondly his 'failure to cite authority in support of his third assignment of error'. See Cruz v. People, supra, 149 Colo. at 189, 192, 368 P.2d at 775, 776. It would seem fair to assume that if counsel had prepared the original appeal, the assignments of error would have been procedurally correct and authorities would have been cited in support of appellant's position.

The report, rather than attempting to present the assignment in appropriate legal form and assert supporting argument on behalf of the defendant based upon the evidentiary record, accepts the determination previously made on the *pro se* appeal record. The portion of the report respecting the assignment of error relating to the exclusion rule advises the Court that, "the granting of the requested exclusion rule is discretionary with the trial Court, and any alleged violation or infraction thereof, in order to obtain sanction therefor, must be shown to

have prejudiced the party complaining of its violation." (Report of counsel at p. 6) Argument on behalf of the defendant respecting how the alleged infraction of the exclusion rule may have prejudiced the rights of the defendant is wholly absent from the report.

The general tenor of the entire report leads this Court to the inexorable conclusion that counsel's examination into the record and the research of the law appears to have been undertaken with the objective of supporting the previous conclusions reached by the court in the petitioner's *pro se* appeal. We note, with interest, that in the exhibits attached to this report there is not a single case cited which supports the petitioner's position on appeal. There is a complete void in the report as to the third, and possibly the most important, element of the mandate of *Douglas,* that of marshalling the arguments in behalf of the defendant. Rather than assuming the role of an advocate to plead his client's cause before appellate court, counsel assumed the role of a quasi judicial reviewer of a result previously reached, providing the court with supplemental supporting legal authority. The role of advocacy in no way intends that counsel, " * * * contend that errors of law occurred when he does not believe they did * * * [thus] pervert[ing] the solemn oath which he takes never to attempt to mislead the court." Stanmore v. People, 401 P.2d 829, 830 (Colo.1965). It only demands that counsel devote his sole attention and energies to asserting his client's cause, leaving to his adversary the corresponding obligation, inherent in the Anglo-American adversary system of jurisprudence, of asserting the cause of the opposition.

Similar 'screening' procedures have been subjected to scrutiny by the United States Supreme Court, and have been found to be incompatible with the constitutional requirement that the criminal defendant be accorded the equal protection of the law despite his financial condition. See Ellis v. United States, supra. In Eskridge v. Washington etc., 357 U.S.

214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958), the trial judge was statutorily authorized to provide the indigent defendant with a transcript of the trial proceedings at public expense, " * * * if in his opinion justice will thereby be promoted." 357 U.S. at 215, 78 S.Ct. at 1062. The trial court denied the defendant's request for a transcript giving as his reasons that, " * * * 'justice would not be promoted * * * in that defendant has been accorded a fair and impartial trial, and in the Court's opinion no grave or prejudicial errors occurred therein'." Ibid. In reversing, the Supreme Court succinctly pointed out that

The conclusion of the trial judge that there was *no reversible error in the trial* cannot be an adequate substitute for the right to full appellate review available to all defendants * * * who can afford the expense of a transcript. * * *

We do hold that, "[d]estitute defendants must be afforded as adequate appellate review as defendants who have enough money to buy transcripts." 357 U.S. at 216, 78 S.Ct. at 1062 (1958) (Emphasis supplied).

Similarly, in Lane v. Brown, supra, the petitioner there, by the action of the public defender, acting in accordance with the Public Defender Act as construed by the Indiana courts, was denied a transcript of the proceedings relating to his petition for a writ of error coram nobis because it was, " * * * the Public Defender's stated belief that an appeal would be unsuccessful." Id., 372 U.S. at 481–482, 83 S.Ct. at 771, 9 L.Ed. 2d 892. The Supreme Court, in vacating the judgment and remanding the case, invalidated a, " * * * provision [which] confers upon a state officer outside the judicial system power to take from an indigent all hope of any appeal at all." Id. at 485, 83 S.Ct. at 773. The procedure followed in the present case likewise conferred upon an attorney, appointed by the Colorado courts, the power to deprive the indigent defendant of the right to have his case presented to the appellate court by an attorney acting as an advo-

cate of his client's cause. In Scobie v. State of Oklahoma, 239 F.Supp. 646 (E.D. Okl.1965), aff'd, 356 F.2d 511 (10th Cir. 1966), the court commented that

> * * * an attorney, however undertaking representation of an accused, is obliged professionally to do his utmost to protect his client's rights.
>
> * * * having the right of appeal, the decision to exercise the same is personal to the convicted person and does not reside in his counsel. Moreover, counsel cannot make the decision that an appeal is frivolous or not meritorious. This is for the judgment of the court. Ellis v. United States, 239 F.Supp. at 648, 649.

Certainly the State of Colorado, consistent with the 14th amendment, can provide for different procedures to meet the needs of the administration of justice so long as those procedures do not result in a denial of due process of law or an invidious discrimination. See Douglas v. People of State of California, supra, 372 U.S. at 356, 83 S.Ct. at 816, 9 L.Ed.2d 811. Also, the Court can, in its good judgment, dismiss frivolous appeals. See Farley v. United States, 354 U.S. 521, 77 S.Ct. 1371, 1 L.Ed.2d 1529 (1957); Ellis v. United States, 356 U.S. 674, 78 S.Ct. 974, 2 L.Ed.2d 1060 (1958); Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). But, as it was stated in Douglas and we think applicable here,

> * * * where the *merits* [emphasis ours] *of the one and only appeal* [emphasis in the original] an indigent has as of right are decided without benefit of counsel, we think an unconstitutional line has been drawn between rich and poor. 372 U.S. at 357, 83 S.Ct. at 816.

The respondent contends that the Tenth Circuit Court of Appeals, in Ruark v. Tinsley, 350 F.2d 944 (1965) has approved the screening procedure followed by the Colorado courts. After a thorough study of that opinion and the briefs therein submitted by both parties,

we cannot agree with this contention. The sole issue before the Court at that time was whether the mandate of the Supreme Court in Ruark v. Colorado, 378 U.S. 585, 84 S.Ct. 1935, 12 L.Ed.2d 1042 (1962), vacating the judgment and remanding the case to the Colorado Supreme Court, " * * * for consideration in the light of Douglas v. [People of State of] California * * *." entitled the petitioner to immediate release from confinement. In a *per curiam* opinion the Court affirmed the denial of habeas corpus holding that the Colorado Supreme Court was free, under the terms of the mandate, to afford the petitioner an appellate review with the benefit of counsel. That the Court of Appeals has, by this opinion, given its approval to the procedure here under examination would be an unwarranted assumption; furthermore, Ruark v. Tinsley, supra, is distinguishable from our case in that counsel appointed by the court to represent Ruark filed a brief before the Colorado Supreme Court urging trial errors and the appeal thus progressed as in the case of ordinary appeals. Thus, the element of advocacy required by *Douglas*, lacking here, was preserved in *Ruark*. Likewise, we have carefully studied the opinions of the Court of Appeals in Scobie v. State of Oklahoma, supra, and Maghe v. State of Oklahoma, 356 F.2d 644 (10th Cir. 1966) and find nothing in those opinions that support respondent's position.

Respondent's contention that the United States Supreme Court, by denying certiorari in Ruark v. People, 402 P.2d 637 (Colo. 1965), cert. denied, 382 U.S. 882, 86 S.Ct. 175, 15 L.Ed.2d 123 (1965) and Cruz v. People, 401 P.2d 830 (Colo.1965), cert. denied, 382 U.S. 869, 86 S.Ct. 145, 15 L.Ed.2d 108 (1965), has impliedly approved of the Colorado procedure is simply without merit. Denial of certiorari has no such meaning or effect; see the opinion of Justice Frankfurter in State of Maryland v. Baltimore Radio Show, 338 U.S. 912, 70 S.Ct. 252, 94 L.Ed. 562 (1950) wherein he states

> The sole significance of such denial of a petition for writ of certiorari

need not be elucidated to those versed in the Court's procedures. It simply means that fewer than four members of the Court deemed it desirable to review a decision of the lower court as a matter of "sound judicial discretion". Rule 38, paragraph 5.

\* \* \* [T]his Court has rigorously insisted that such a denial carries with it no implication whatever regarding the Court's views on the merits of a case which it has declined to review. The Court has said this again and again; again and again the admonition has to be repeated. Id. at 917, 919, 70 S.Ct. at 254, 255.

We are not unmindful of the holding on this present issue by a member of this Court in Stanmore v. Patterson, Warden, Civ.Act. No. 9240 (October 8, 1965). However, a careful and exhaustive study of the reported cases since *Douglas* convinces us that our present conclusion is the proper one. In the final analysis, the fact remains that the guarantee of *Douglas* that the indigent defendant, like the defendant who can pay, shall be entitled to have the *full* assistance of counsel in order that he may be assured of an adequate and meaningful appeal, has yet to be afforded to this petitioner by the State of Colorado.

The record in this case indicates that a complete transcript of the state court trial is presently available; therefore an appeal can be perfected within a relatively short time. It is therefore

Ordered that petitioner be granted an appellate review of his conviction, with the aid of counsel within six months from this date; and, failing that, he shall be discharged from custody by the respondent.

If he is granted such an appellate review and his conviction is affirmed, then respondent may retain him in custody until he completes the sentence he is now serving, or until he is otherwise legally released.